UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MILTON RICKMAN #252749,

    Plaintiff,

v.                                                Case No. 2:16-cv-101
                                               HON.  GORDON J. QUIST

MICHAEL MARTIN, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Milton Rickman, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq.*, against former Special Activities Coordinator Michael Martin, current Special Activities Coordinator David Leach, and Chippewa Correctional Facility Chaplain David Rink. Plaintiff alleges that Defendants Martin and Leach refused to provide him with a religious diet and that Defendant Rink denied his request to purchase a kufi cap and a Star of David pendent. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (ECF No. 11, PageID.98.) The Court served Plaintiff's complaint "against Defendants Martin, Rink, and Leach with regard to Plaintiff's First Amendment and RLUIPA claims, and against Defendants Martin and Leach with regard to Plaintiff's equal protection claims."[1]  Defendants have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  (ECF No. 48.)

---

[1] (ECF No. 11, PageID.103.) In his brief, Plaintiff also addresses a due process claim premised on the MDOC's grievance process. However, the Court only served the First Amendment, RLUIPA and equal protection claims on Defendants. *Id.*  In addition, even assuming that Plaintiff asserted a due process claim, the claim is properly dismissed because a prisoner does not have constitutional right to an effective grievance procedure. *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017).

Plaintiff has also filed a motion for summary judgment. (ECF No. 51.) Both parties responded. This matter is now ready for decision.

Plaintiff identifies himself as a "Hebrew Israelite," also known as a Messianic Jew. A Messianic Jew is one who accepts Jesus Christ as the Messiah. The Michigan Department of Corrections ("MDOC") does not expressly recognize the Hebrew Israelite religion. See MDOC Policy Directive 05.03.15 (effective December 22, 2015).

In late 2012, Plaintiff first requested to receive the MDOC's special religious diet. In his request, Plaintiff stated that his religion prohibited him from eating "any pork, catfish, ravens, shrimp and many other scavengers that walk or swim upon this earth or the sea." (ECF No. 49-2, PageID.260.) Chaplain Bolton subsequently interviewed Plaintiff. During the interview, Chaplain Bolton found that Plaintiff did not regularly attend Jewish services on Saturday even though his MDOC religion records show that he identified as Jewish in 2009. Chaplain Bolton also found that Plaintiff frequently ordered non-kosher food—such as beef summer sausage sticks and Texas beef flavored ramen noodles—from the prisoner store that conflicted with his purported religious diet. Relying on this interview, Defendant Martin denied Plaintiff's request for the special religious diet. Defendant Martin wrote, "[i]t appears that his primary concern as stated, is avoiding non-kosher meat. He may do this by not purchasing it from the prisoner store, and by requesting the meatless menu from Food Service." (ECF No. 49-2, PageID.256.)

In April 2014, Plaintiff again requested to receive the MDOC special religious diet. In this request, Plaintiff claimed that he could not eat non-kosher meats and that his current meals violated his religion because of cross-contamination. This time, after interviewing Plaintiff, Chaplain Bolton recommended that Plaintiff receive the special diet. Nonetheless, the new current

Special Activities Coordinator, Defendant Leach, denied Plaintiff's request "based on a careful review of all the information available to [him] at this time." (ECF No. 49-3, PageID.276.)

In addition, at some point in 2015, Plaintiff attempted to purchase a kufi cap and Star of David pendant. Defendant Rink rejected Plaintiff's request because, according to MDOC policy, Plaintiff was not authorized to possess those religious items. Pursuant to MDOC policy, a Muslim inmate is permitted to purchase a kufi cap, and a Jewish inmate is permitted to purchase a Star of David pendant. See MDOC Policy Directive 05.03.15A (effective December 22, 2015). Because Hebrew Israelite is not a recognized religion in the MDOC, a member of that faith is not automatically authorized to possess any religious items. If an inmate of an unrecognized religion wants to possess a religious item, the inmate must submit a written request to the warden of the prison. See MDOC Policy Directive 05.03.15, ¶ JJ (effective January 22, 2015). The deputy director makes the final decision on whether the inmate can possess the religious item. *Id.* ¶ KK.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th

Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones*, Inc., 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

To begin, Plaintiff did not specify in his complaint whether he was suing Defendants in their individual capacities, official capacities, or both. "[A]bsent any indication that these defendants are being sued individually, we must assume that they are being sued in their official capacities[.]" *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). "While it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' . . . failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice. *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (citation omitted). In the opinion of the undersigned, Defendants had sufficient notice that Plaintiff was suing each Defendant in his individual capacity. First, Plaintiff seeks compensatory and punitive damages in his complaint. Moreover, Defendants have asserted the defense of qualified immunity, which "is a personal

defense that applies only to government officials in their individual capacities." *Benison v. Ross*, 765 F.3d 649, 665 (6th Cir. 2014); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (noting that the defense of qualified immunity may be available for an official in a personal-capacity action and the defense of Eleventh Amendment immunity may be available for an official-capacity action). Thus, the undersigned finds that Plaintiff, who is proceeding *pro se*, is suing each Defendant in both his individual and official capacity.

As to the official-capacity claims, Defendants argue that they are entitled to Eleventh Amendment immunity. "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Graham*, 473 U.S. at 169 (citation omitted). A suit against a state officer in his official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009). Thus, Defendants in their official capacities are immune from suit to the extent that Plaintiff seeks monetary damages. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010). However, the Eleventh Amendment does not bar suits against state officials in their official capacities for prospective relief. *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (applying *Ex Parte Young*). Therefore, Plaintiff's claims against Defendants in their official capacities for prospective relief are not barred by the Eleventh Amendment.

As to the personal-capacity claims, Defendants argue that they are entitled to qualified immunity on Plaintiff's claims. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d

425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct.  *Id.* at 232.  If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted.  The court may consider either approach without regard to sequence.  *Id*.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend. I.  While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates retain the First Amendment protection to freely exercise their religion.  *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish that this right has been violated, Plaintiff must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendants' behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); s*ee also Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").  A

practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

However, the First Amendment does not prohibit prison officials from imposing substantial burdens on a prisoner's exercise of his religious beliefs where the prison officials' actions are "reasonably related to legitimate penological interests." *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact the accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Id.* at 484 (citing *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *See Turner*, 482 U.S. at 89-90 ("[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational."). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at

issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90-91. "However, 'if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.'" *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 91).

In this case, Plaintiff alleges that (1) Defendants Martin and Leach violated his rights under the First Amendment when they denied his request for the religious diet and (2) Defendant Rink violated his rights under the First Amendment when he denied Plaintiff's request to purchase a kufi cap and Star of David pendant. Plaintiff has not established that he is entitled to judgment as a matter of law on these claim. Whether Plaintiff holds a sincerely-held religious belief is a question of fact. "As with any issue involving an individual's state of mind, the sincerity of one's religious beliefs is decidedly a question of fact." *Hall v. Martin*, 2015 U.S. Dist. LEXIS 30572, at *12 (W.D. Mich. Feb. 18, 2015) (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965), *Report & Recommendation adopted*, 2015 U.S. Dist. LEXIS 29585 (W.D. Mich., Mar. 11, 2015). Similarly, with respect to Plaintiff's claim against Defendant Rink, it is unclear whether Plaintiff's religious belief was substantially burdened. The MDOC policy provides that when an inmate of an unrecognized religion wants to possess a religious item, the inmate must submit a written request to the warden of the prison. See MDOC Policy Directive 05.03.15, ¶ JJ (effective January 22, 2015). Whether Plaintiff tried to follow this procedure is unclear from the record.

Due to these questions of fact, the undersigned finds that Plaintiff is not entitled to judgment as a matter of law on his First Amendment claims against Defendants.

Next, Defendants assert that they are entitled to summary judgment on the grounds of qualified immunity. First, Defendants Martin and Leach argue that they are entitled to qualified immunity based on the *Turner* factors. In *Swansbrough v. Martin,* 2016 U.S. Dist. LEXIS 181356 (W.D. Mich., Oct. 4, 2016), *Report & Recommendation adopted*, 2017 U.S. Dist. LEXIS 2004 (W.D. Mich., Jan. 6, 2017), the magistrate judge evaluated the *Turner* factors on a similar First Amendment claim involving the denial of a religious diet. The magistrate judge recommended granting summary judgment to the defendants because:

> It is well recognized that prison officials have a legitimate penological interest in controlling the cost of special religious diets. *See, e.g.*, *Green v. Tudor*, 685 F. Supp. 2d 678, 698 (W.D. Mich. 2010) (recognizing that the State of Michigan "expends significant financial and administrative resources" providing prisoners with religious diets that are "expensive, diverting resources from other penological goals"); *see also, Berryman v. Granholm*, 343 Fed. Appx. 1, 6 (6th Cir., Aug. 12, 2009) (prison officials have a legitimate penological interest in controlling the cost of special religious diets). It is neither unreasonable nor improper for prison officials to deny special religious diets to prisoners who consume food and alcohol which is inconsistent with the requested diet. See *Berryman*, 343 Fed. Appx. at 6 (upholding the denial of a religious diet to a prisoner who consumed food products inconsistent with the diet in question).
>
> It is also well recognized that prison officials have a legitimate interest in "maintaining discipline within the prison." *Id.* As Defendants note, permitting Plaintiff to participate in a religious diet program when he has a demonstrated history of consuming food and alcohol in violation of the tenets of his stated religion could negatively impact prison security as such could cause resentment among prisoners who adhere to their faith's dietary restrictions. Finally, as Plaintiff indicated during his deposition, he is presently able to self-select items from the available food offerings that satisfy his religious dietary needs. (PageID.158). In sum, Defendants have established that there exists a valid, rational connection between their actions and the legitimate governmental interest put forward to

justify such. The remaining factors all weigh in Defendants' favor for the reasons discussed herein.

*Id.* at *9-10. In his objection, Plaintiff argued that this amounted to a zero-tolerance policy that the Sixth Circuit considered in *Colvin v. Caruso*, 605 F.3d 282, 295 (6th Cir. 2010), and that the district court later found unconstitutional in *Colvin v. Caruso*, 852 F. Supp. 2d 862, 867 (W.D. Mich. 2012.) However, the court adopted the report and recommendation after finding that "[t]he instant case, in contrast to *Colvin*, does not involve the application of a strict zero-tolerance religious meal policy. Instead, Plaintiff does not dispute that, on numerous occasions, he consumed non-kosher/halal food or that he consumed alcohol, both of which are inconsistent with Muslim dietary restrictions." *Swansbrough,* 2017 U.S. Dist. LEXIS 2004, at *5.

In this case, Defendants Martin and Leach argue that maintaining discipline within the prison justified their decision for denying Plaintiff's request for the religious diet.[2] The evidence establishes that Plaintiff ordered non-kosher food from the prison store on multiple occasions. Defendants contend that allowing Plaintiff to obtain the religious diet "when he openly flaunts restrictions imposed on other Jewish prisoners could provoke resentment amongst other prisoners who are adhering to the tenets." (PageID.250.) However, Defendants incorrectly categorize Plaintiff as Jewish. He is Hebrew Israelite, as specified in his special diet requests, (PageID.259 & 279). In addition, unlike the inmates in *Colvin* and *Swansbrough*, a question of fact exists as to whether Plaintiff was actually consuming the non-kosher food or trading the food with other inmates as he suggests.

Defendants also argue that they had a reasonable basis for denying Plaintiff the religious diet because Plaintiff did not regularly attend Jewish services on Saturday despite not

---

[2] Unlike *Swansbrough*, Defendants do not argue that controlling the cost was a legitimate governmental interest to justify their decision for denying Plaintiff's request for the religious diet

-10-

having any other obligations. Again, Defendants incorrectly identify Plaintiff as Jewish. Plaintiff did not attend Jewish services because he is not Jewish. As Chaplain Bolton recognized in the second interview, Hebrew Israelite services are not offered at the MDOC. (PageID.277.) Defendants finally argue that Plaintiff had alternate means to self-select food items that met his dietary needs. However, Plaintiff maintains that the alternate means still force him to violate his religion.

In the opinion of the undersigned, several questions of fact exist as to the reasons for Plaintiff being denied the special religious diet. Due to these questions of fact, the undersigned cannot determine whether Defendants Martin and Leach violated Plaintiff's clearly-established rights. *See Bletz v. Gribble*, 641 F.3d 743, 749 (6th Cir. 2011) ("[I]f genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper.") Therefore, in the opinion of the undersigned, Defendants Martin and Leach are not entitled to summary judgment on the grounds of qualified immunity.

Next, Defendant Rink argues that he is entitled to qualified immunity because he did not have the requisite personal involvement to be held liable under 42 U.S.C. § 1983. In support of his argument, Defendant Rink cites *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999), where the court dismissed a retaliation claim because it found that none of the non-supervisory defendants were involved in the alleged adverse action. However, the facts in *Shehee* are distinguishable from the facts in this case. Here, Defendant Rink was personally involved with the alleged unconstitutional act as he made the decision to deny Plaintiff's disbursement request. In fact, Plaintiff alleges that the prison business office forwarded the request to Defendant Rink to make the decision because he is the Chaplain at URF. Although Defendant Rink asserts that he was following policy when denying the request, Defendant had far greater personal involvement

than the *Shehee* defendants. Therefore, in the opinion of the undersigned, Defendant Rink had the requisite personal involvement.

Nonetheless, the undersigned must address the second step of the qualified immunity test and determine whether the right was clearly established. To be considered as "clearly established," existing precedent must have placed the unlawfulness of the officials' conduct "beyond debate." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). The question in this case is whether it was clearly established in 2015 that a Hebrew Israelite inmate has a right to possess both a kufi cap and Star of David pendant. Only a couple of Sixth Circuit cases address the Hebrew Israelite religion. *See Alexander v. Carrick*, 31 F. App'x. 176 (6th Cir. 2002); *Goss v. Myers*, 2000 WL 125905, at *1 (6th Cir. 2000) (table). None of those cases establish that a Hebrew Israelite inmate has a right to possess a kufi cap, a Star of David pendant, or any other religious material. Therefore, in the opinion of the undersigned, Defendant Rink is entitled to qualified immunity on the personal capacity claim for damages.

Plaintiff next claims that Defendants Martin, Leach and Rink violated his rights under the RLUIPA. RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison receiving federal funds] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). Unlike a First Amendment claim, the Court does not consider the *Turner* factors when evaluating a RLUIPA claim.

Although RLUIPA does not define "substantial burden," courts apply the traditional substantial burden test, as defined by the Supreme Court's free exercise jurisprudence. *Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 701 (E.D. Mich. 2004)

(citations omitted).  A "substantial burden" requires something more than an incidental effect on religious exercise. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988) (a substantial burden has "a tendency to coerce individuals into acting contrary to their religious beliefs"); *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 141 (1987) (there is a substantial burden where a regulation puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs"); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226-27 (11th Cir. 2004) (a substantial burden must place more than an inconvenience on religious exercise); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (substantial burden is "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable").

Here, Plaintiff's motion for summary judgment should be denied for the same reasons discussed when evaluating the First Amendment claim. Defendants argue only that the RLUIPA claim for money damages should be dismissed because it is not permitted.  The Sixth Circuit has held that RLUIPA does not constitute a waiver of a State's Eleventh Amendment immunity from claims for money damages in official-capacity suits. *Cardinal v. Metrish*, 564 F.3d 794, 800-01 (6th Cir. 2009).  The Sixth Circuit has held that RLUIPA does not permit claims for money damages against state prison officials in their individual capacities. *Haight v. Thompson*, 763 F.3d 554, 568-70 (6th Cir. 2014).  Thus, in the opinion of the undersigned, Plaintiff's claims for money damages under RLUIPA should be dismissed.  However, Plaintiff's RLUIPA claims against Defendants for prospective relief should remain in this case.

Plaintiff also asserts an equal protection claim against Defendants Martin and Leach based on the denials for the religious diet.  The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal

protection of the laws." U.S. Const. amend. XIV, § 1. To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him because of his membership in a protected class. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). When neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Midkiff v. Adams Cty.*, 409 F.3d 758, 770 (6th Cir. 2005).

Here, Plaintiff has failed to submit any evidence that he was intentionally discriminated against based on his religion when Defendants Martin and Leach denied his request for the religious diet. The fact that inmates of other religious faiths received the religious diet does not establish that he was purposefully discriminated against by Defendants. As discussed above, Defendants denied Plaintiff's request, not because he was a Hebrew-Israelite, but because his store orders included items that were in direct conflict with his purported religious diet. Therefore, in the opinion of the undersigned, Defendants Martin and Leach are entitled to summary judgment on Plaintiff's equal protection claim.

Finally, although it was not addressed by either party, the undersigned finds that Plaintiff's claims against Defendant Martin for prospective relief are moot because he no longer holds the position of the Special Activities Director within the Michigan Department of Corrections. Federal Rule of Civil Procedure 25(d)(1) provides that, "[a]n action does not abate when a public officer who is a party in an official capacity . . . ceases to hold that office while the

action is pending. The officer's successor is automatically substituted as a party." The court does not need to substitute a party because Plaintiff has also sued the current Special Activities coordinator. Therefore, in the opinion of the undersigned, Plaintiff's claims for prospective relief against Defendant Martin should be dismissed.

Accordingly, it is recommended that Plaintiff's motion for summary judgment (ECF No. 51) be DENIED. It is further recommended that Defendants' motion for summary judgment (ECF No. 48) be GRANTED IN PART and DENIED IN PART. First, to the extent Plaintiff seeks monetary damages against Defendants in their official capacities, those claims should be dismissed. Second, Plaintiff's claim for damages against Defendant Rink in his personal-capacity should be dismissed because he is entitled to qualified immunity. Third, to the extent Plaintiff seeks monetary damages under RLUIPA, those claims should be dismissed. Fourth, Plaintiff's equal protection claims against Defendants Martin and Leach should be dismissed. Fifth, to the extent Plaintiff seeks prospective relief in any of his claims against Defendant Martin, those claims should be dismissed because he is longer employed at the MDOC.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  February 21, 2018

                                                     /s/ Timothy P. Greeley
                                                    TIMOTHY P. GREELEY
                                                    UNITED STATES MAGISTRATE JUDGE